ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| ANYELO ALFONSO JUNCO Apelante v. BERC SARAFIAN Apelado | KLAN202400839 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Añasco Civil Núm.: AÑ2021CV00021 Sobre: INCUMPLIMIENTO DE CONTRATO DE COMPRAVENTA |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 14 de enero de 2025.

Comparece el señor Anyelo Junco Michel, en adelante el señor Junco o el apelante, quien solicita que revisemos la *Sentencia* emitida el 5 de junio de 2024 y notificada el día 6 del mismo mes y año por el Tribunal de Primera Instancia, Sala de Añasco, en adelante TPI. Mediante la misma, el TPI declaró sin lugar la *Demanda* y determinó que el apelante no tiene derecho al cumplimiento específico de un contrato de opción.

Por los fundamentos que expondremos a continuación, se devuelve el caso al Tribunal de Primera Instancia para que atienda la *Reconvención* y resuelva lo que en derecho corresponda. Se confirma la *Sentencia* en todo lo demás.

**-I-**

El señor Junco presentó una *Demanda* sobre incumplimiento de contrato contra la Sucesión Sarafian, compuesta por Linda Shirvanian, Berc Sarafian, en adelante el señor Sarafian o el apelado, Steven y Ara, ambos de apellidos Sarafian, en conjunto los apelados. Adujo, en síntesis, que mediante contrato de opción las partes acordaron la compraventa de un bien inmueble localizado en el Barrio Playa de Añasco por el precio de $117,000.00. Que la transacción se mantuvo en suspenso por dificultades registrales del inmueble en controversia y posteriormente, el señor Sarafian notificó al apelante del vencimiento del contrato de opción de compraventa. Acto seguido, le ofreció vender el inmueble por un precio mayor al originalmente convenido.[1]

Arguyó, además, que efectuó una cantidad considerable de pagos como parte de las contraprestaciones de la compraventa, por lo cual "tácitamente se realizó la compraventa a precio aplazado". En consecuencia, como sufrió "pérdidas económicas", solicita que "se decrete la celebración de la firma de[la] escritura pública", más "el pago de honorarios de abogado, costas y gastos…".[2]

Esta *Demanda* se enmendó a los únicos efectos de incluir determinadas sumas de dinero, alegadamente desembolsadas por el apelante, relacionadas con el inmueble objeto de la compraventa.[3]

---

[1] Apéndice del apelante, págs. 13-16.
[2] *Id.*
[3] *Id.*, págs. 17-21.

Por su parte, el señor Sarafian contestó, tanto la *Demanda Enmendada*[4] como la *Segunda Demanda Enmendada*[5] y en ambos casos presentó una *Reconvención*. En ambas contestaciones, aceptó unas alegaciones, negó otras *y* alegó, en esencia, que el contrato de opción de compraventa "expiró por sus propios términos" y que le ofreció al señor Junco el dinero pagado "pero este no lo aceptó". En la *Reconvención* reclamó la pérdida de ganancias resultante de la venta frustrada del inmueble, producto de una anotación de demanda presentada por el apelante sobre la propiedad.[6]

Luego de varios trámites que no hay que relatar para adjudicar la controversia ante nuestra consideración, el TPI emitió unas *Determinaciones de Hechos, Conclusiones de Derecho* y *Sentencia*.[7] En estas, declaró sin lugar la *Demanda* y, en consecuencia, resolvió que el apelante no tiene derecho al cumplimiento específico del contrato de opción. Además, ordenó a la parte apelada consignar en el Tribunal la suma de $88,500.00 y al Registrador de la Propiedad de Mayagüez a cancelar la *Demanda* inscrita sobre la finca en controversia.

En lo aquí pertinente, el TPI consideró probados los siguientes hechos:

1. La propiedad objeto de esta acción está localizada en la Carr. 401 del Km. 2.4 en el Barrio Playa de Añasco.

[…]

4. El demandante y el demandado se reunieron en un restaurante en el barrio Playa de Añasco y llegan a un acuerdo para la venta de la propiedad…

---

[4] *Id.*, págs. 22-24.
[5] *Id.*, págs. 25-27.
[6] *Id.*, págs. 23-24 y 26-27.
[7] *Id.*, págs. 1-9.

[…]

6. No teniendo el tiempo y el conocimiento para atender esto, el demandado acordó con el demandante que este, a través de sus abogados, atendería el asunto legal y que se cerraría para el 22 de abril de 2017.

7. … El contrato de opción indicaba: "Deed of Sale is to be prepared by attorney of Buyers' choice and executed in said attorney's office no[sic] later than April 22, 2017."

[…]

8. A esos efectos, se firmó un contrato de opción en la [sic] que aparece firmando el demandante y el demandado…

9. El contrato de opción establecía un precio de venta de $117,000 pagadero de la siguiente manera: $8,000 que ya había sido pagado, $59,000 para el 5 de diciembre de 2016 y $50,000 para la fecha de cierre pactada del 22 de abril de 2017.

[…]

12. Llegó el 5 de diciembre de 2016 y el demandante no pagó la suma de $59,000 según el contrato y tampoco ejerció la opción con los pagos acordados para el 22 de abril de 2017.

13. … el demandado ofreció extender el contrato por un año más. Durante ese tiempo, el demandado recibió varias sumas de dinero del demandante para abonarse al precio de venta. Específicamente, los siguientes pagos se acreditaron al precio de venta:

    a. El 16 de julio de 2016 se le pagó la cantidad de $8,000.00 dólares.

    b. El 1 de febrero de 2017 se pagó la cantidad de $20,000.00 dólares.

    c. El 7 de agosto de 2017 se le pagó la cantidad de $20,000.00 dólares.

    d. El 5 de septiembre de 2017 se le pagó la cantidad de $20,000.00 dólares.

    e. El 9 de enero de 2018 se le pagó la cantidad de $9,000.00 dólares.

    f. El 12 de abril de 2018 se le pagó la cantidad de $2,000.00 dólares para pagar en su nombre servicios de mantenimiento.

    g. El 18 de abril de 2018 se le pagó la cantidad de $9,500.00 dólares; para un total de $88,500.00.

14. La parte demandante reclama el derecho a que se le reconozca como abono al precio de

venta: a) pagos hechos por el demandante al Sr. Reinaldo Crespo por la suma de $22,100.00 entre los meses de marzo 2018 a marzo 2019 por material de relleno a raíz de los daños causados por el Huracán María; y b) pagos efectuados por el demandante al Sr. Carlos Chaparro Vélez por la suma de $3,100.00 a razón de $100.00 mensuales. Este Tribunal determina que no procede acreditar dichos pagos como parte del precio de venta, toda vez que el demandado no tenía conocimiento de los mismos y nunca le fue solicitado que fuesen acreditados. El demandante no ofreció prueba verbal o escrita que hubiese tal ofrecimiento u aceptación. Además, los trabajos efectuados fueron hechos tanto en la propiedad objeto de este caso como en la propiedad de Swanson comprada por el demandante que no es objeto de este caso.

15. El año transcurrió y el demandante no ejerció la opción y el demandado ofreció al demandante devolver el dinero pagado, pero este no aceptó…

16. No hubo prueba alguna ofrecida por la parte demandante de que el demandado acordó extender el contrato de opción de forma indefinida o por un término adicional. Al contrario, se admitió en evidencia prueba documental en donde el Sr. Sarafian en varias ocasiones luego de vencido el contrato ofrece devolverle el dinero a la parte demandante.

[…]

18. El Sr. Sarafian pone la propiedad a la venta y el 25 de febrero de 2021, le envía un mensaje de texto al demandante Anyelo Junco en la que le indica que tenía un comprador precalificado que había ofrecido $200,000.00[.] Le indica que estaba dispuesto a no aceptar la oferta si a Junco le interesaba la propiedad y ofrecía por lo menos $190,000.00.

19. El Sr. Junco no contesta y el 30 de abril de 2021 el Sr. Sarafian le escribe otro mensaje de texto en la [sic] que le solicita su dirección para devolverle su dinero por medio de cheque certificado.

20. El 4 de marzo de 2021, el Sr. Sarafian firmó un contrato de venta con el Sr. Oscar L. Ruiz Bermúdez y Arlene Hernández Medina por la suma de $185,000.00 pero no se pudo cerrar porque el demandante presentó la demanda de este caso en el Registro de la Propiedad como un embargo preventivo.[8]

En desacuerdo, el señor Junco presentó una solicitud de reconsideración, que el TPI declaró No Ha Lugar.[9]

---

[8] *Id.*, págs. 3-6.
[9] *Id.* pág. 10.

Nuevamente inconforme, el apelante presentó una *Apelación* en la que alega la comisión de los siguientes errores:

> ERRÓ EL TPI AL NO DETERMINAR QUE EL ACUERDO EN CONTROVERSIA NO PODÍA ESTAR CONDICIONADO A QUE EL OPTANTE RESOLVIERA LA SITUACIÓN TITULAR O HEREDITARIA O REGISTRAL DE LA PROPIEDAD AL MOMENTO DE LA OPCIÓN.
>
> ERRÓ EL TPI AL DETERMINAR QUE EL ACUERDO SUSCRITO POR LAS PARTES NO CONSTITUYÓ UNA NOVACIÓN EN EL CONTRATO DE OPCIÓN DE COMPRA LUEGO DE QUE LA PARTE DEMANDANTE REALIZARA EL PAGO DE $88,500.00 DÓLARES DEL TOTAL DE LOS $117,000.00 PACTADOS Y QUE LA PARTE DEMANDADA LOS RECIBIERA Y CAPITALIZARE SIN REPARO ALGUNO.
>
> ERRÓ EL TPI AL DECLARAR LA RESOLUCIÓN DEL ACUERDO OTORGADO ENTRE LAS PARTES Y NO EL CUMPLIMIENTO EN ESPECÍFICO DEL MISMO.

Examinados los escritos de las partes, el expediente, la transcripción de la prueba oral estipulada y la prueba documental, estamos en posición de resolver.

-II-

A.

Reiteradamente se ha resuelto que en materia de obligaciones y contratos rige el principio de la autonomía contractual entre las partes. Esto implica que las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público.[10] Asimismo, el Artículo 1044 del Código Civil de Puerto Rico de 1930,[11] vigente al momento en que ocurrieron los hechos, establece el principio general de que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse según lo contratado. De modo que, cuando las partes acuerdan mediante su consentimiento

---

[10] *Demeter Int´l v. Srio. Hacienda*, 199 DPR 706, 727-728 (2018); *Oriental Bank v. Perapi et al.*, 192 DPR 7, 15 (2014).
[11] 31 LPRA sec. 2994.

libre y voluntario, obligarse a cumplir determinadas prestaciones, surge entonces el contrato.[12] Ello representa que se perfeccionó el contrato y desde entonces obliga, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[13]

Finalmente, la parte que se vea afectada por el incumplimiento de los términos pactados tiene como remedios el cumplimiento específico de la obligación incumplida, o pedir la resolución del acuerdo y, en ambos casos, el resarcimiento de los daños causados.[14]

**B.**

La novación está regulada en los Arts. 1157 a 1167 del Código Civil de 1930.[15]

Así pues, el Art. 1157[16] establece que las obligaciones pueden modificarse (1) variando su objeto o condiciones principales, o (2) sustituyendo la persona del deudor o (3) subrogando a un tercero en los derechos del acreedor. Una obligación se extingue cuando otra la sustituye y así se declara terminantemente, o cuando la antigua y la nueva obligación son de todo punto incompatibles.[17]

Finalmente, la novación tradicionalmente es la sustitución de una relación obligatoria por otra que la extingue. La misma puede ser modificativa o extintiva. Ahora bien, el deslinde entre ambos tipos de novación tiene que estar basado en un análisis de

---

[12] 31 LPRA sec. 3371. Véase, además, *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000).
[13] Art. 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3375.
[14] 31 LPRA sec. 3052; *Álvarez v. Rivera*, 165 DPR 1, 19 (2005); *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616, 625 (2000).
[15] 31 LPRA secs. 3241-3251.
[16] 31 LPRA sec. 3241.
[17] 31 LPRA sec. 3242.

cuál ha sido la voluntad de las partes y el significado económico de la modificación. De modo que, la voluntad de novar se presume, cuando existe total incompatibilidad entre dos obligaciones. Bajo este supuesto, la discrepancia existente extingue la obligación primitiva y ocasiona el nacimiento de otra nueva obligación en su lugar.[18]

**C.**

El Tribunal Supremo de Puerto Rico, en adelante TSPR, define el contrato de opción como un convenio por el cual una parte concede a la otra, por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal.[19]

Los elementos esenciales del contrato de opción a compra son: (a) la concesión por una parte a la otra de la facultad de decidir sobre la celebración o no del contrato principal, sin obligación alguna de ésta; (b) la concesión de modo exclusivo; (c) por plazo cierto; y (d) sin otra condición que el propio juicio del optante.[20]

Por otro lado, el contrato de opción termina si se observan algunas de las siguientes circunstancias: (1) mediante su ejercicio positivo y (2) por el transcurso del término pactado, sin que el optante ejerza tal derecho.[21]

Finalmente, en el caso específico del contrato de opción de compraventa, nada impide a, "los

---

[18] *Municipio de San Juan v. Prof. Research,* 171 DPR 219, 220-221 (2007).
[19] *Rosa Valentín v. Vázquez Lozada*, 103 DPR 799 (1975); *PDCM Asoc. v. Najul Bez*, 174 DPR 216 (2008); *Atocha Thom MacAn Inc. v. Registrador*, 123 DPR 571, 583 (1942).
[20] *SLG Irizarry v. SLG García,* 155 DPR 713, 722 (2001).
[21] *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002).

contratantes… incluir en el acuerdo de la opción de compra cláusulas que exijan que el optante ejecute ciertos actos simultáneos al ejercicio de la opción, de forma tal, que de no realizarse, se estimará como no ejercido el derecho de opción".[22]

**D.**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia.[23] Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia.[24] El fundamento de esta deferencia es que el juez de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla.[25] En vista de esta deferencia, los tribunales apelativos no intervendremos con la apreciación de la prueba reflejada en las determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad, o que cometió un error manifiesto.[26]

No obstante, cuando las conclusiones de hecho se basan en prueba pericial o documental, el tribunal de apelaciones se encuentra en la misma posición que el

---

[22] *Matos Lorenzo v. Rivera Tirado*, 181 DPR 835, 845-846 (2011).
[23] *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[24] *McConnel v. Palau*, 161 DPR 734, 750 (2004).
[25] *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001).
[26] Véase, *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020).

tribunal de instancia.[27] De modo, que el tribunal intermedio no está obligado a conceder deferencia a la apreciación de la prueba del foro sentenciador.

-III-

El apelante alega, que anterior al descubrimiento de prueba, el apelado no reveló, ni al señor Junco ni a los notarios seleccionados por este, que en virtud de un "quit claim deed", suscrito en el estado de Florida, pasó a ser el titular de la propiedad en controversia. Además, el apelante opina que correspondía al señor Sarafian "resolver los problemas notariales" para culminar la compraventa. Así pues, sostiene que por haber aceptado "los pagos tardíos sin objeción alguna", se "novaron las condiciones pactadas para ejercer las prórrogas del contrato… y [el señor Sarafian está impedido] de negarse a venderle la propiedad". Finalmente, sostiene que estuvo preparado para el cierre y que de haber existido tracto registral, hubiese comprado el inmueble inmediatamente.

En cambio, el apelado aduce que las determinaciones del TPI a los efectos de que el contrato de opción de compraventa estaba condicionado a que los abogados del señor Junco resolvieran la situación registral de la propiedad; y de que no hubo voluntad de las partes para extender el término del contrato por un término adicional al año extendido; están basadas en "la prueba estipulada, la prueba admitida, la prueba verbal, el comportamiento ("demeanor") de los testigos y la prueba documental".

---

[27] *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016).

Luego de revisar independiente la totalidad de la prueba, corresponde confirmar la *Sentencia* apelada. Veamos.

El 20 de octubre de 2016 las partes suscribieron un "Contract of Option", en adelante el contrato de opción de compraventa.[28] En virtud del mismo, el señor Sarafian vendería el inmueble que se describe a continuación:

> RUSTICA: Solar número nueve (9) con cabida de MIL TREINTA Y SIETE PUNTO SETENTA Y TRES (1037.73) metros cuadrados, radicado en el Barrio Playa del término municipal de Añasco. En lindes por el NORTE, en sesenta y nueve punto noventa y uno (69.91) metros con el solar número ocho (8); por el SUR, en setenta punto sesenta y cinco (70.65) metros con el solar número diez (10); por el ESTE en dieciséis (16) metros con la carretera estatal número cuatrocientos uno (401); y por el OESTE, en trece punto treinta y tres (13.33) metros con la parcela dedicada a uso público letra B.[29]

El precio del inmueble sería $117,000.00 y el apelante tendría que efectuar los pagos correspondientes conforme al siguiente itinerario:

| | |
|---|---|
| Earnest money advanced | $8,000 |
| Money credited Dec 5,2016 | $59,000 |
| Certified check at closing | $50,000 |
| Total Price | $117,000[30] |

La compraventa tendría que celebrarse no más tarde de 22 de abril de 2017.[31]

En el marco del contrato de opción de compraventa el apelante efectuó pagos ascendentes a $88,500.00.[32]

El 5 de diciembre de 2016, el apelante no pagó la cantidad de $59,000.00 convenida en el contrato de

---

[28]Apéndice del apelante, págs. 11-12. Véase, además, Transcripción de la Prueba Oral, en adelante TPO, de la vista celebrada el 3 de abril de 2024, pág. 87.
[29] Apéndice del apelante, págs. 11-12.
[30] *Id.* Véase, además, TPO de la vista celebrada el 3 de abril de 2024, pág. 89 y TPO de la vista celebrada el 4 de abril de 2024, págs. 107-110.
[31] Apéndice del apelante, pág. 11.
[32] *Id.*, pág. 4. Véase, además, TPO de la vista celebrada el 4 de abril de 2024, págs. 158-159.

opción de compraventa. Igualmente, no ejerció la opción con los pagos convenidos en o antes del 22 de abril de 2017. En dicho contexto, el apelado le ofreció al señor Junco el reembolso de las cantidades desembolsadas.[33]

Posteriormente, el señor Sarafian prorrogó el contrato de opción de compraventa del inmueble en cuestión por 1 año.[34]

Sin embargo, el apelado no extendió el contrato de opción de compraventa por un término adicional a la prórroga de 1 año previamente concedida.[35]

De lo anterior, es forzoso concluir que el señor Junco incumplió con el término del contrato de opción de compraventa y de su extensión. En consecuencia, no procede concederle remedio alguno, incluyendo el cumplimiento específico del negocio jurídico en cuestión.

Tampoco se configuró una novación del contrato de opción de compraventa. Esto es así, porque dicho negocio jurídico expiró el 22 de abril de 2018 y la oferta de la compraventa de la propiedad por un precio mayor se perfeccionó después que la opción de compraventa se había extinguido. Por lo tanto, al originarse la compraventa no existía una relación obligatoria válida en derecho que pudiera ser novada.[36]

Lo anterior se confirma con la siguiente comunicación de 24 de julio de 2018, dirigida al señor Junco y a su representante legal:

---

[33] *Id*. Véase, además, TPO de la vista celebrada el 3 de abril de 2024, págs. 89 y 92; TPO de la vista celebrada el 4 de abril de 2024, págs. 109-110, 117-118 y 124-126.
[34] TPO de la vista celebrada el 4 de abril de 2024, págs. 109-110.
[35] TPO de la vista celebrada el 4 de abril de 2024, pág. 110.
[36] Vázquez Bote, *Tratado Teórico Práctico y Crítico de Derecho Privado Puertorriqueño*, New Hampshire, Equity Publishing Company (1991), T. V, págs. 395-396.

**Anjelo Junco & I are out of contract. The original terms were closing by April 22,2017. We had come to an agreement to sell my property for $117,500 in June of 2016.** At that time I set a low price to sell because of my IRS debt.

I am no longer under financial duress; therefore, I am not willing to release that property at such low price as we originally agreed upon.

**My current price to sell is $200,000.**

**If Anjelo agrees, we can proceed.** If not, I am happy to refund what he had forwarded as partial payment…

Berc Sarafian[37]

Como si lo anterior fuera poco, entre las partes no hubo *animus novandi*. Ello responde a que en todo momento el señor Sarafian tenía claro que el contrato de opción de compraventa se había extinguido el 22 de abril de 2018, al punto que ofreció al apelante, en varias ocasiones, devolver las cantidades desembolsadas.[38]

En esta etapa conviene mencionar que la determinación de si existe o no la novación es una cuestión de hecho, que corresponde hacer al foro sentenciador.[39] Al respecto concluimos, que luego de revisar cuidadosamente la totalidad de la prueba no encontramos razón alguna para intervenir con la determinación que sobre el particular hizo el foro recurrido.

Finalmente, en nuestra opinión, el TPI no adjudicó la totalidad de la controversia, ya que no se pronunció de forma alguna sobre la reconvención presentada por el apelado.

---

[37] Apéndice del apelante, pág. 34. (Énfasis suplido).
[38] Vázquez Bote, *op. cit.*, págs. 395-396.
[39] *Id*, pág. 398.

En consecuencia, corresponde devolver el caso al Tribunal de Primera Instancia para que atienda los méritos de la Reconvención del señor Sarafian.[40]

## -IV-

Por los fundamentos previamente expuestos, se devuelve el caso al Tribunal de Primera Instancia para que atienda la Reconvención y determine lo que proceda en derecho. Se confirma la *Sentencia* en todo lo demás.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[40] *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 937 (2008).